S. H. CUMMINS, Appellant, *vs.* TONY MARTZEN *et al.* Appellees.

*Opinion filed April 20, 1916.*

1. SPECIFIC PERFORMANCE—*contract not enforced against party having no reciprocal right against complainant.* A contract for the conveyance of real estate will not be specifically enforced in equity where the defendant has no reciprocal right to enforce the contract against the complainant.

2. SAME—*when decree denying specific performance will be affirmed.* A decree dismissing for want of equity a bill to specifically enforce an alleged contract, the only memorandum of which was written across the face of a check cashed by the defendant, will be affirmed, where the evidence does not satisfactorily show a clear right by the complainant to the relief, but, on the contrary, tends strongly to show that the defendant, who could not read English, did not know he was dealing with the complainant but thought he was giving a ten-day option to the drawer of the check, whose subsequent conduct caused the defendant to believe he had declined to exercise his option.

APPEAL from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

CHARLES G. BRIGGLE, for appellant.

DAVIS McKEOWN, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Sangamon county dismissing a bill for specific performance of a contract to convey real estate. The bill was filed October 27, 1913, by S. H. Cummins, appellant here, against Tony Marcinka, *alias* Tony Martzen, who will hereafter be referred to as Martzen. The bill alleged B. R. Brisk, acting as agent for appellant for the purchase of the property described in the bill, on August 2, 1913, gave Tony Martzen a check for $100, upon the face of which was written the following memorandum of agreement: "Received of S. H. Cummins $100 on purchase from Tony Marcinka as part pay on his property on Sangamon avenue; balance, $13,900, to be paid ten days after abstract and deed are tendered to said S. H. Cummins;" that on the same day the check was given Martzen he indorsed and cashed it and has ever since retained the money to his own use; that on said second day of August, Martzen agreed to sell to appellant for $14,000 the real estate described and appellant agreed to purchase the premises for said sum, as evidenced by the said written memorandum executed by appellant and Martzen. The bill alleges appellant has always been ready and willing to comply with the terms of the agreement, and about August 12, 1913, he applied to and demanded from Martzen an abstract of title and deed of conveyance, offering to pay Martzen the balance due on the delivery of the deed, but Martzen refused, and still refuses, to comply with the agreement on his part. The prayer of the bill is for specific performance.

Martzen answered the bill, admitting Brisk gave him a check for $100 August 2, 1913, upon which was written some memorandum the nature and effect of which he did

not know, as his understanding of the English language is limited and confined to a few spoken words and does not extend to written words. The answer admitted Martzen received $100 on the check and applied it to his own use, but alleges the check was given for a ten-day option on the purchase of the premises but denies the option was given appellant. The answer further avers the agreement of Martzen for the sale of the premises was to sell them to B. R. Brisk; that he at no time agreed to sell them to appellant; that pursuant to the agreement to sell to Brisk, Martzen on the twelfth day of September (evidently intended for August 12) tendered to said Brisk at his saloon office a deed and abstract; that Brisk made no objection to the deed or the title but said he was unable to get the money and that his attorney (appellant) had been unable to get it for him. The answer further avers that shortly after said date Brisk and appellant asked for another chance to buy the premises and Martzen agreed to give them an additional ten days to raise the money, and the abstract of title was then delivered to appellant; that he kept it an unreasonable length of time and made no objection to the title but said he could not raise the money, and Martzen finally finding another purchaser, sold the premises. The answer alleges that neither Brisk nor appellant, or anyone for them, ever made any tender or offer to pay until October 15, 1913, before which time Martzen had entered into a written contract to sell the premises to Kasten Stockus, to whom he did make conveyance on October 27, 1913.

On January 31, 1914, the appellant, by leave of court, amended his bill. The amendment alleged that since the filing of the original bill Martzen had conveyed the premises to Kasten Stockus, who had given a mortgage or deed of trust on the property to Peter Theurer, trustee, to secure a note for $9000, and that on the same day Stockus executed a similar mortgage or trust deed to the Peter Schoenhofen Brewing Company to secure the payment of $9000, which

Stockus received from the brewing company and paid to Martzen on the purchase of the property. The amendment alleges that at the time Stockus bought the property he knew of the contract with appellant for its purchase, and that he was not an innocent purchaser and that his title was null and void; also that the mortgagees had notice of appellant's contract for the purchase of the premises, and that the title of Stockus and the mortgagees is invalid and a fraud against the rights of appellant. Stockus and said mortgagees were made additional parties to the suit, and the amended prayer was that Stockus be decreed to convey the premises to appellant and that the mortgages be canceled and set aside as a fraud on the rights of appellant upon his paying the balance of the purchase money, which he averred he was ready and willing and then offered to pay to Stockus. Stockus and the mortgagees answered, denying all knowledge that appellant had any right or interest in the premises.

After the issues were made up the cause was referred to the master in chancery, who heard the testimony and reported it, with his conclusion that appellant had failed to prove his cause by a preponderance of the evidence, and recommended that a decree be entered dismissing the bill for want of equity at appellant's cost. Exceptions by appellant to the master's report were overruled by the chancellor and a decree was entered dismissing the bill for want of equity. The chancellor found and recited in the decree that on the second day of August, 1913, Martzen agreed with appellant to sell the premises for $14,000; that at said time B. R. Brisk delivered to Martzen a check for $100 signed by said Brisk, and underneath the signature was written the word "agent;" that a memorandum appeared on the face of the check, as follows: "Received of S. H. Cummins $100 on purchase from Tony Marcinka as part pay on his property on Sangamon avenue; balance, $13,900, to be paid ten days after abstract and deed are tendered to said S. H. Cummins," which was the only writing evidencing the con-

tract, and that Martzen on the same day indorsed and cashed the check and has retained the proceeds to his own use. The decree further finds that appellant carried on the negotiations for the purchase in his own behalf and not as attorney for Brisk; that Martzen could understand spoken English but could not read or write it, except his own name, and all the time believed he was dealing with Brisk and that appellant was acting as Brisk's attorney; that Martzen never understood the memorandum on the check and never understood the purchaser was to have ten days after delivery of the deed and abstract in which to make payment of the balance of the purchase money, but understood the memorandum to mean the balance was to be paid within ten days after the execution of the check and that the contract was in reality a ten-day option for the purchase of the premises, and if not exercised within that time the $100 was to be forfeited. The decree further finds that ten days after Martzen was given the check he tendered Brisk a deed and abstract of title and demanded payment of the balance, but Brisk told Martzen he did not have the money and that his attorney (appellant) was out of the city, and made no disclaimer of interest under the contract; that his conduct was such as to confirm in Martzen his belief that he was dealing with Brisk and not with appellant; that Brisk was the constant and ever present associate of appellant in all the negotiations with Martzen and told appellant of the tender of the deed and abstract a few days after the tender was made. The decree further finds that afterwards appellant, Brisk and Martzen had numerous meetings and negotiations, in which appellant claimed he was ready and willing to pay and Martzen claimed he was ready and willing to accept the money, but that no actual tender was made by appellant or Brisk of the balance of the purchase money until October 15, 1913, but that prior to that time Martzen had entered into a binding contract for the sale of the premises to Stockus, and afterwards, on October 27, 1913, in pursuance

273 — 4

of said contract, he conveyed the property to said Stockus. The decree further finds Stockus had not sufficient notice of any rights claimed in the property by appellant at the time he contracted to buy it, and that the mortgagees were also innocent purchasers, and that the equities were with defendants and appellant was not entitled to the relief prayed for in his bill.

Brisk, Martzen and most of the witnesses who testified in the case were Lithuanians, and a number of them had only a partial familiarity with the English language. They understood it fairly well when they heard it spoken but in repeating conversations their vocabulary was limited, and words used by them could not always be confidently relied upon to express what was said or meant in conversations they attempted to relate. Martzen could not read writing in English but could write his name. While the decree finds the negotiations were carried on by appellant for the purchase of the property on his own behalf, it further finds that Martzen did not so understand it but thought the sale was being made to Brisk and that appellant was acting as Brisk's attorney. The testimony of appellant and his witnesses, and that of Martzen and his witnesses, was conflicting as to just what occurred and what was said at the meeting between the parties when the check was written and delivered to Martzen. We are of opinion the conduct of Brisk and appellant, whether so intended or not, was well calculated to impress or give Martzen to understand and believe he was agreeing to sell to Brisk. No explanation appears why, if appellant was buying the property on his own account, he did not give his check for the $100 advance payment, as he claimed he had ample money on deposit, nor why, instead of writing out an agreement in the usual manner in such cases, he wrote a memorandum on a card and had Brisk copy it on the check, which memorandum was the only writing relating to the sale of the property and the terms of the sale. We think from all that was said and done there, Martzen

might well have understood his contract was with Brisk and that appellant represented him as attorney. Martzen was unable to read the writing on the check, and he and his witnesses testify the agreement was that in ten days Martzen was to deliver the deed and abstract of title and the balance of the purchase money should then be paid. Some of Martzen's friends who were with him when the check was given to him and who went with him when he left appellant and Brisk, testified they read the writing on the check and told him what it was, but they did not appear to understand it, for they took it to be a ten-day option for the purchase of the property, and that unless complied with by the purchaser the $100 was to be forfeited. It seems it must have been so understood by Martzen, and he must also have understood that Brisk was the purchaser, for on the twelfth day of August Martzen took a deed he had executed to Brisk and an abstract of the title and went to Brisk's place of business, tendered him the deed and abstract and requested the payment of the balance of the purchase money. Even then Brisk did not deny that he was the purchaser and tell Martzen appellant was the man he had contracted with, but, according to the weight of the testimony, he told Martzen he did not have the money and that appellant, his attorney, was out of town. The proof, with little or no contradiction, shows appellant was not out of town at that time.

It is insisted the answer did not rely upon a fraud or artifice being practiced on Martzen, and that when he accepted the check it was his duty to inform himself of what was written thereon before he indorsed it and procured the money; that the memorandum on the check was the contract, and he cannot now be heard to say that the agreement entered into is different from the writing. The decree does not find, nor do we think it necessary to reach the conclusion the chancellor reached, that actual fraud was perpetrated upon Martzen. If by their conduct, whether it was intended or not, appellant and Brisk procured Martzen to

agree to sell the property to appellant and give appellant ten days after tender of deed and abstract to pay the balance, when he intended and believed he was selling to Brisk on condition that Brisk pay the balance in ten days, we do not think that equity and good conscience require the enforcement of the specific performance of the agreement, and especially so when Brisk, as recited in the decree,—"the constant and ever present associate of Cummins in all his negotiations with Martzen,"—after being tendered the deed and abstract and requested to pay the balance, did not disclaim being the purchaser but said he did not have the money and that appellant, his attorney, was out of town. Certainly Martzen would not be injured if he received the price agreed upon, no matter whether paid by appellant or Brisk, but it appears from the proof that he regarded the deal as ended under the agreement, and though subsequently he had talks with Brisk and appellant about conveying the property to appellant, he finally on October 15 entered into a written agreement with Stockus to sell to him and under that agreement made a conveyance.

There is much conflict in the testimony as to the negotiations between the parties after August 12, the testimony of appellant tending to show that Martzen was deceptive and evasive, and that of Martzen tending to show the conduct on the other side was not dependable. Without further adverting to the evidence, it is sufficient to say a perusal of it does not impress us the chancellor erred in holding that it was not sufficient to justify enforcing specific performance. The rule is that specific performance can never be demanded as a matter of absolute right,—it rests in the sound judicial discretion; but where all the necessary incidents and conditions are proven by satisfactory evidence, the relief should be decreed as a matter of right and not as a mere favor. (*Schenck* v. *Ballou,* 253 Ill. 415; *Evans* v. *Gerry,* 174 id. 595, and cases there cited.) Specific performance will not be decreed at the suit of a party against whom the other party

has no reciprocal right to enforce the contract. (*Brown* v. *Sunderland,* 251 Ill. 523.) Tested by the rules laid down in the above mentioned authorities we cannot say the decree is contrary to the law and the evidence, and it is affirmed.

*Decree affirmed.*